May it please the Court, Mark Labaton on behalf of the appellant from Isaac Friedberg and Labaton, and I'd like to reserve five minutes of my time. Manager on time. Thank you. Thank you, Judge Thomas. In 1992, 23 years ago, this Circuit decided U.S. ex rel. Wang v. FMC Corporation. The Circuit decided this opinion in the absence of higher authority based on a Second Circuit case, Long Island Lighting. And the opinions are virtually identical. This Circuit adopted the same reasoning, the same textual analysis, and the same understanding of the False Claims Act legislative. That's not true, but does it matter? I mean, I don't think it's true at all. I think they're quite different analyses, but does that matter? No, it doesn't matter, Your Honor, Judge Breyer. It doesn't matter, because in both cases, the Supreme Court in the Rockwell decision has indicated, has effectively abrogated those Circuit opinions and has indicated that they're not consistent with the current understanding of the False Claims Act as it has developed in particular. So we're sitting on bonk. We can develop any rule we wish. What rules should we adopt and why? This Court should, can, as Judge Thomas mentioned, adopt what rules it wants. And it should abrogate the decision in the earlier decision in the Wang, that the Wang court made, because that decision is inconsistent with the False Claims Act and doesn't serve the purposes of the False Claims Act amendments that were made in 1986. It seems a little problematic to me that you didn't make this argument below. I understand that, Judge Smith. I mean, it seems to me that you challenged whether the information was publicly disclosed in a district court, but you didn't even talk about what you now want me to talk about. Isn't that a problem for you? Well, first of all, Judge Smith, I would take, I would say that we did challenge the hand-in-disclosure requirement in the briefing below. You said a word about it. I mean, I read what you said, but the reality was it was all about whether this was publicly disclosed or not, and the Court had to make a decision. And the Court went off on its own, really, not getting much help from you. Your Honor, the — Judge Smith, as you mentioned, the primary briefing below was dealt with the public disclosure requirement. Nonetheless, we did brief the issue of whether there was a hand that our relator had in the public disclosure, which under current law is guided by the Wang decision. So the fact that you said, well, we'll talk about a hand in it, and never challenged necessarily that idea, shouldn't be important to me? I think what should be of paramount importance is that it's clear, Your Honor, Judge Smith, from both the Second Circuit's opinion and the D.C. Court opinion in Davis, as well as the — Well, I guess I can appear — I can understand you want me — get me off this issue. But the bottom line is, I'm having a tough time understanding why my poor colleague on the District Court had to determine what to do, and you really didn't make the argument you're now making for me, and why I should then just say, too bad. Well, Your Honor, I think one of the reasons that the Court should address this issue is it's a purely legal issue, which is — Wasn't your problem that you were in the District Court and that you had not only a clear precedent against you, but a later precedent which continues to use this? What good was it going to do to argue it to the District Court? That's absolutely correct, Judge Burson. It would have been — it would have been futile. That would have been a great argument if you'd ever made it. That's Judge Burson's great argument, and I appreciate she would make it. But nonetheless, I don't find that in your briefs at all. That's one that she makes, and it's very good, because it says, well, we had a case thereafter, so why should I make it? But I'm still stuck with my question. This — the briefing below by counsel below at the time addressed the issue and the law as it exists, Judge Smith, and now we have a precedent that is clearly both contrary to what the Congress intended in 1986 when it adopted an original source provision that encourages whistleblowers to come forward, particularly insiders like our clients in this case. So why don't you explain to — I gather you've answered Judge Smith's questions as well as you can, so I'm wondering if you could — you say that this is — the Supreme Court is inconsistent with Wang. Why don't you explain to me in just plain English why it's inconsistent? Thank you, Judge Kaczynski. It's inconsistent for several reasons. I always worry when lawyers have several reasons. Okay. If it comes up as just one good reason, you don't need any more. The number one — certainly one good reason, and I think there are several, Your Honor, but — One good — Your very best reason. It's because — because when Congress amended the False Claims Act in 1986, Congress intended a wholesale overhaul of that act, not a tweak, as the Wang Court alludes to, but an overhaul. And the primary purpose — one of the primary purposes of the overhaul was to create a genuine original source exception that allowed insiders to come forward and bring their cases as original sources, even when there was a public disclosure. And this has become more important today than it was 23 years ago, Judge Kaczynski, because today with the Internet and the expansion of what could be a public disclosure and cases like the case — the Supreme Court case in Schindler's Elevator, where public disclosure is a part of the — is a part of the — is a part of the — is a part of the importance of the insider, the insider like our client, who is a supervisor of 1,300 or 6,000 employees. You're doing a lot of talking, but you haven't gotten to the inconsistency. You see, we said X. The Supreme Court said something else, which is inconsistent with X. Correct. Well, why don't you — you say it's clearly inconsistent. So why don't you show me why it's clearly inconsistent? What is it that we said that's inconsistent with what the Supreme Court said? Helpful to say, you know, we said this, the Supreme Court said that. Right. So we don't have to go into Internet or, you know, into — tell me what the inconsistency is. Okay. Sure, sure, Judge Kaczynski. The — this Court in Wang said the original source has to — has to have a hand in the public disclosure. The Supreme Court in Rockwell said that had Congress wanted to link original source status to the information underlying the public disclosure, Congress would have said so. And there's a reason for that, the — a good reason for that. The Court — the question for Rockwell was whether — whether in determining original source status, one looks to the public disclosure or the allegations in the complaint. And Rockwell held that one looks to the complaints, the relator's allegations in the complaint. So, Judge Kaczynski, fundamentally it makes no sense that a relator would have to have a hand in the public disclosure when the relator does not even have — might not even have to have knowledge of that disclosure. And then, furthermore, Rockwell discusses what Judge Scalia refers to as the sense of the matter. That is, why should it matter when a — that a relator — whether a relator was a source of a public disclosure when that relator might have significant direct and independent information that's of a different nature that supports the allegations? The Court in Davis pointed out — Judge Barisan? Go ahead. The Court in Davis pointed out is that often this information from relators is more important and has more value than — than what might be out there in a public disclosure. What I was going to say is that the new statute takes direct account of that point and says that if — that either the public — the information has to be provided before the public disclosure or it has to be significantly in addition to what was disclosed in the public disclosure. That's a very sensible rule. Is there any way to get that rule out of the current — out of the old statute, the one that you're dealing with? Because you're arguing it. You're essentially arguing that the reason we ought to do this is because there could be additional information, but there also could not be — on your theory, I gather, there could be not additional information. Right. Thank you, Judge Barisan. You're right that the — that's correct. The original — the new statute made things a little clearer. It carried through Congress's idea that original source status should be important. But even — even the old statute was pretty well conceived and anticipated some of this problem itself, Judge Barisan. For example, there's language in the addition — in the old statute, which is carried over, that says if there's a public disclosure and the relator's information has very little value, the relator can get a lesser share of the relator's — of the relator's share. Congress would not have — so in that sense, Congress anticipated the problem that was carried through. This legislation would have — would have not made any sense in light of, you know, had Congress not anticipated this problem. The — and Congress did anticipate many of the problems which Wang seemed to try to address. For example, Congress — Are you trying to get this Court to get rid of Wang and get rid of Meyer and then send it back and have the judge look at it from that perspective? Because you've still got — are you just trying to win right here? Well, Judge Callahan, we would like to win right here because we do think that the record before the Court indicates that we've satisfied all the two elements for original source. However — But then you've got the — you've got the first rule — Right. — with one of your clients. Right. Or I guess you've got the two together, which is — is it Gedecky or — Gedecky. Yeah. However, Judge Callahan, you know, we are cognizant of the fact that — that if — if the Court should abrogate Wang and there's any question as to any of the other — any of the factual question that might exist from the record, then the appropriate place for that to be decided would be by the district court. And the district court didn't talk about the first two prongs at all, did it? They did not, Judge Smith. And I think that is significant that they didn't. I think it was just this — this — and this first-to-file rule blocked the Court's attention from that matter. The — but — So if I send this back to the district court, if I look at Meyer, Meyer pretty well determines what direct knowledge ought to be. You don't want me to get rid of that, do you? I'm — I'm sorry, Judge — I mean, if — Judge Callahan's questions seemed to indicate you wanted me or the Court to eliminate Wang and Meyer. Yet it seemed to me that Meyer was pretty straight in determining what direct knowledge means. You don't want to get rid of that, do you? No, no. And it seems to me that Meyer also determined what it means to have independent knowledge. You don't want to get rid of that, do you? No, those are part of the statute, Judge Smith. The statute had two prongs. No, but they even, as I read Meyer, interpreted what direct knowledge means. They said it means firsthand. And they interpreted what independent knowledge means, which I understood it to say information obtained via his or her own efforts rather than the efforts of others. So it seems to me you want that, don't you? That is a standard the district court would then have to apply, wouldn't it? Yes, Your Honor, it would. That's the standard of the statute. The statute — the statute had two prongs, and we don't dispute those two prongs. Direct and independent knowledge and providing the information to the government before filing. Those — what the Wang court did is it grafted on a third requirement that was not — that is antithetical to the purposes of the statute, that creates problems that — and Wang — and the statute itself, even though it — as Judge Burson mentioned, it didn't fully anticipate the problem. It pretty much did anticipate the problems that Wang addressed. The problem with your interpretation, which may be what the statute says, is that you could have somebody who didn't know anything about what went on in the public disclosure, but doesn't — and has independent and direct information, but doesn't provide it to the government or anybody else until after the public disclosure and after the government even already knows about it and he hands all the information over and then he goes and files his lawsuit. And I gather that would be — even if it's not anything different than was in the public disclosure, on your theory, that would be okay. Well, yes, Your Honor, but the statute as written, the 1986 statute, does address that, and in addition to that, the — Iqbal and other decisions help weed out, you know, cases that might be marginal if that was, of course, the event. I would also say that your facts, those are not the facts. Those are not the facts in our case. Our fact is, Your Honor, we have a relator who is a senior vice president of a company who supervised 1,300 of the 6,000 employees. Who a lot more than was in the public disclosure. Absolutely. Our allegations are that he found them, that he analyzed them, that he had — that he reported them to the company, that he tried to fix them. Our facts are — our relator knew more than was publicly disclosed, just as the case in Yuran by the Second Circuit, just as the case in Davis by the D.C. Circuit, only more so. In both those cases, the circuits found that the relators knew a lot more than was publicly disclosed. In our fact, it's even more the case. And, Your Honor, the primary purpose of the amendments — the False Clams Act, as the Court knows, was amended in 86 following procurement — defense procurement scandals, health care scandals. The government at that time was recovering $54 million a year as a result of the cases. In order to invigorate the False Clams Act, and now they're recovering billions each year, the last three years, they put in primary legislation that to encourage whistleblowers to come forward, like our client. And what the Wang decision does is it actually insulates bad actors, it discourages whistleblowers to come forward, and it creates other dilemmas that are inconsistent with the False Claims Act. And let me explain those. It discourages whistleblowers to come forward because what is in a — the Act puts in anti-retaliation and other provisions to encourage them to come forward. Yet, what is — what am I supposed to advise a client that's a high-level client, that's a high-level insider? Don't come forward because there might be something on a website that might disclose all your information. You could be barred because that — or someone's FOIA request. It discourages them. It also insulates bad actors. How does it do that? Because — because Wang says if there's a public disclosure, you could be barred no matter how much information. Does that mean that a company could publicly disclose its own acts to insulate itself from liability? Congress didn't intend that. And a company could not only insulate itself by disclosing or leaking to a website its bad acts, a bad actor could also disclose and deny at the same time. Wang allows for that. The Congress did not intend that. And Wang creates another problem, and it doesn't answer this problem. It creates a legal exception to what Congress wanted, and that is it says you have to have a hand in the public disclosure. Well, the False Claims Act, which despite its imperfections in 86, was pretty well calibrated and well thought out. And Wang says on the one hand, you've got to disclose publicly. On the other hand, we want to have a seal so the government can investigate, and you will be punished if you disclose publicly. So what does Wang do? It engrafts another exception onto its exception and says, well, giving to the government won't violate the seal. Well, that makes no sense because of the growing body of case law that says, both in the First Circuit, in the Sixth Circuit, and others, giving your stuff to the government is not a public disclosure, because public, according to the Act, means public. So at the end of the day, Wang really creates its own problems inconsistent with the very purposes of the False Claims Act and doesn't ‑‑ discourages the very whistleblowers that the amendments were intended to come forward from coming forward, insulating bad actors. And at the same time, Wang ‑‑ what is Wang based upon? It's based ‑‑ How, again, does this insulate bad actors? It insulates bad actors because a disclosure will kill a case, will kill a case even when the relator, as Judge Scalia mentioned in Rockwell and as the Davis Court mentioned, has very strong inside information. It allows a company to leak or disclose information to insulate itself. Don't we want companies that are wrongdoers to leak or disclose information that are doing bad things? Sounds like a good thing to me. Sounds like you're encouraging them to. You put it on the Internet and it gets found out and discovered. I mean, the bad thing here is that wrongdoers go leak their own misconduct? That's a bad thing? I've never heard of that. Well, just kidding. Why? It's certainly when a FOIA request or a disclosure on a website or in this age of the I think the more important thing is that it deters ‑‑ Okay, but why is that a bad thing? Why is encouraging companies to disclose bad information about themselves a bad thing? You make it sound so evil. It's not necessarily evil, Judge Kaczynski. Why is it possibly evil? Why isn't it a good thing? It's certainly not a good thing to borrow or later with direct and independent knowledge underlying their allegations just because there's some information out there. Well, if that's how the statute is written, that's how the statute is written. But you're saying it encourages companies to do something evil. And the evil thing that you tell us the companies do is to out themselves. Well, certainly a lot. Did you ‑‑ Well, certainly it doesn't help accomplish Congress's purpose of encouraging whistleblowers to come forward when a rumor or something of that nature can bar a whistleblower with different and significant information. Can I pick up on something in a way that Judge Smith asked you before? A lot of that comes about because of the way in which we've interpreted the rest of the statute, which is that you can have a ‑‑ something can be based on a public disclosure, A, even if you never knew about the public disclosure. And second of all, something can be based on a public disclosure as long as the public disclosure might tip off the government to go investigating, even though it has much less information, for example, than the information that your client has and would bring forward. So it's because of both those things that, isn't it, that the public disclosure becomes, you know, kind of a monster or, you know, a very large thing, even if it's a very small thing. Even if it's a rumor or a one incident or whatever. Right. Yes, Judge Bresson. And to get to that as well as Judge Kaczynski said. I'm sorry. Yes, what? I didn't understand. What are you agreeing with? Can you repeat it? What I'm saying is that the reason why you think there's a problem here with an answer to Judge Kaczynski is because somebody could say not very much in a not very public place and it could become a public disclosure. But if we had a different view of what was a public disclosure that would bar someone else, then you wouldn't have this problem. Is that right, essentially? Essentially, what has become a public disclosure has been expanded over the years because of the Internet, because of websites, because of all that. Because of our case law. And because of the case law. And that makes the importance of original source, particularly of insiders, even greater. As the Court in Rockville recognized and the Court in Davis recognized, the Court in Davis said there later may have an eyewitness account or important documents supporting the allegations not available from other sources. And the legislation tries to encourage these whistleblowers to come forward with anti-retaliation and other provisions, increased monetary awards. But is there a reason you would want them to come forward if they weren't adding something? Exactly. And there was no reason why that case would even get anywhere with Iqbal and other provisions if they weren't adding anything. And again, in 86, Congress said if they weren't adding much but they added something, we'll allow them to have a reward, but it would be a smaller reward. And clearly, I mean, Judge Kucinich, if I was advising a client who was a high ‑‑ like our client in this case, I came into the case later, but a senior official who might be jeopardizing his or her career and be blackballed and has a reputation that might be different from some vague information publicly disclosed, would I advise someone to take that risk knowing that some ‑‑ even though they had value to the government and even though they had value to bring forth, would I ‑‑ would that person ‑‑ would that person would have to weigh whether it's worth it all. Is it worth it because there's some rumor out there on the Internet to bring forward my information when I could be black? So what? I mean, life brings tough choices. You want to have higher reward, sometimes you have to take higher risks. I don't find that very persuasive. If it encourages companies to put out information about themselves that's bad, that sort of leads to ‑‑ that can lead to the government finding out about it, and that might be worth it. But the ‑‑ Well, empirically, does it ever happen? I mean, you're giving a speculative reason. Empirically, has this been a problem? Has this been a problem? Well, it certainly barred whistleblowers in the Davis case and the Uron case, the D.C. and the Second Circuit case, who the courts thought would have been valuable whistleblowers but for the hand in disclosure requirement. It certainly has ‑‑ there have been other cases that were, I would contend, district courts in this district court barred what otherwise would have been cases successfully brought or meritorious. But by companies who came forth and said, as a tactic, we're going to disclose things just so we can eliminate a False Claims Act case? I think not. I'm sorry, Your Honor? I mean, as a tactic that the companies came forward to make a public disclosure simply for the purpose of eliminating a federal ‑‑ Oh, oh, oh. There's no empirical evidence. No, there's no empirical evidence of that. But under the design of the statute, that would be conceivably possible. And that's not the prime reason why we're here. We're here because ‑‑ You're down to about two and a half minutes. Do you want to reserve? I'll reserve that time, Your Honor. Thank you. May it please the Court, I'm Greg Luce. I'm counsel for the defendant KCI in both the Gadecki and Hartpence cases. To pick up on the questions from the panel, I would simply observe at the outset that for 18 years after this Court's ruling in Wong, the Congress did not amend the provisions of the original source. Then it did. What does that prove? A big pardon? Then it did. Is that it? And then it did. So I don't know what that proves. Well, I think what ‑‑ Congress takes a long time to act. It would suggest that there's not been perhaps quite the evil identified by counsel for the ‑‑ Under the new statute that this hand in the disclosure thing is gone? Am I saying that the disclosure ‑‑ Is it true that under the new statute this problem doesn't exist? No, Your Honor. I think that the new statute allows two things that are significant. When we talk about new, we're talking about 2010, right? The 2010, March 2010, which was a provision of the Patient Protection Act, PACA, we sometimes refer to it. And it allowed two things. First, it allowed the Department of Justice to essentially decide who got to be a relator. And second, it said that for purposes of an original source, it means an individual who either prior to a public disclosure under subsection E4A has voluntarily disclosed to the government the information on which allegations or transactions in a claim are based, or who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the government before filing an action. This is fairly close in many purposes to the Wang requirement. The Wang requirement itself was not the only circuit to identify some additional obligation on the part of a relator. But more importantly, the Wang ruling is not itself inconsistent with the Rockwell ruling. In Rockwell, the court looked at, for purposes of a textual analysis, what was the information that was important? Was it the information that had been the knowledge of the relator as to the public disclosure, or was it the information that the relator had as to the relator's own allegations in the complaint? That is the same standard that was applied in Wang. In Rockwell, the Supreme Court said that the information that's pertinent is the information about which the relator has information about his or her allegations in the complaint. That is exactly what Wang held. Well, not exactly. That's part of what Wang held. That's part of what it said. But Wang said, and if it's been disclosed publicly, otherwise you've got to show that you had a hand in the disclosure. That's not what, that's not in Rockwell. That is not, Your Honor, in Rockwell. So then it isn't quite the same, is it? Well, I offer this for purposes of your consideration. The point in Rockwell was, what was the information required of an original source? And the information required. That's what we're supposed to be deciding here, right? Yes, Your Honor. Because when Wang, they suggested that the original source, if the information was already publicly disclosed, had to have a hand in it in order to be an original source. Correct. But that's not in the statute. It is not in the statute. It was identified as a policy consideration because the direct and independent information required of a relator in Wang was found by the court to be satisfied by that relator. Wang had that direct and independent. Wang did, in identifying the reason for choosing this rule, it seemed to kind of amalgamate being part of the public disclosure and providing the information to the government. So their concern was, well, this person isn't a whistleblower if they're simply echoing what was publicly disclosed, but it could easily be that the person could have provided all the information to the government, to the government, not to the media, but before anything was disclosed, right? And then he wouldn't have a hand in the disclosure, but he would be excluded by Wang, even though he did exactly what the statute suggests. Well, Your Honor, this Court for now 23 years has relied upon Wang and that third prong. We're not in Wang. We're now on Banks, all right? We're here to reconsider Wang, not only to consider whether it's consistent with Rockwell or not considered with Rockwell, but just to consider it. So why don't we just do that instead of going on about how long we've had it or any of that? Well, Your Honor, if that is the consideration, I would offer this. First, the prong for having a hand in was very well addressed in the Johnson Controls case, in which the Court there observed that there is a strong public policy to be found in the legislative history in determining what this Court held, and virtually every circuit has held, and the Supreme Court has held, to be an ambiguous provision. May I ask you this, Mr. Luce? Is there any mention at all in the text of the statute that the relator should have had a hand in a public disclosure? No, Your Honor. It is not a textual foundation. Judge Poole was a little bit, sounded to me when I read his opinion, sounded a little bit miffed that Mr. Wang had had the information for four years, and it after somebody else did the public disclosure. But I read that opinion a couple of times. I couldn't find any textual basis at all for that third and definitive Wang element, and you've just confirmed that there isn't any. It is not in the text, Your Honor. Thank you. What it is, however, is in that third element. Remember that the direct and independent information was what Rockwell addressed. There is that third element that is required, to have voluntarily provided that information to the government. And the Wang court identified the delay. That's the second element, voluntarily provided the information to the government prior to filing suit. Not even in that part of the statute does it talk anything about and have had a hand in producing that information publicly. All it says is voluntarily provide the information to the government prior to filing suit. That is entirely correct in the text of the statute. If they meant some time earlier than that, they could have said so. That just says before the lawsuit. Well, Your Honor, multiple circuits contemporaneous with Wang identified additional requirements that were involved with it. So we should do it, too, even though there's no basis for it? Well, I think that in the face of an ambiguous statute, looking to the legislative history. Both of those circuits, the Second Circuit in Long Island Lighting and the D.C. Circuit have changed their rules, haven't they? They've gotten rid of that third element. No, Your Honor. That's not correct. The Davis case has replaced the prior ruling in Finley in the D.C. Circuit. In the Second Circuit in Long Island Lighting, Judge Rakoff called into question the reasoning of Long Island Lighting, and in an opinion that at least in part called into question its reasoning in light of Rockwell, concluded that it was no longer in effect. A summary of affirmance in the Second Circuit is not precedental. But I would ask you. Your Honor, you were starting to say before some questions came out, took you away that there was a policy reason for having the third requirement that the relator have had a hand in the very public disclosure. What is the policy that you think underlies that? Yes, Your Honor. Thank you. The policy reason for that is to allow what some courts have called the golden mean, a balance between encouraging a bona fide relator with information to come forward promptly with it and to, on the alternative, avoid against the kind of parasitic lawsuits that someone reads a newspaper article and files. But why does this person have to come forward with it by going public with it as opposed to going to the government with it? Well, one can do both, Your Honor, and still be an original source. But on your version, he would have to go public with it. He couldn't just go to the government with it. Well, not necessarily. No, I don't agree, Your Honor. Wait a second. Why? He could go to the government privately, and that would then form the basis for the government disclosing it in a report or leaking it to the media. It doesn't necessarily have to mean that the relator makes it public as well. Yes, it does mean the public. But I think the key to Rockwell, the reasoning of the Court there is that, as noted, a relator could have information that is direct and independent of what is in the public disclosure and still have a valid footing to be a relator. They just have to have it direct. And I think of it as three prongs, not three, two. Are you arguing for the Wang standard or not? Am I arguing? For the Wang standard. The Wang standard is the law of this circuit. I understand you're unbound. You're asking us to keep exactly that or some other version. Yes. I believe that it should be kept. All right. So it does require that he be the source of the public disclosure. So your example would not work. It does not require them to be the source, in this Court's language, of the public disclosure. Have a hand in the public disclosure. But have a hand in that public disclosure.  And that is different than the public disclosure. But you just gave an example where he had nothing to do with the public disclosure and said that would be covered. Your Honor, if the person has a hand in for matters arising before 2010 and otherwise meets that direct and independent requirement, that could come about in a number of ways. That was this circuit's determination. And the Sixth Circuit, I was asked about whether the Sixth Circuit retains its, have a disclosure of the information prior to bringing the suit. So the Sixth Circuit, the Second Circuit, which, let's say, is hanging in doubt and the other. But provide the government with information prior to any public disclosure. Prior to the public disclosure. Not bringing the suit. Yes. That's correct, Your Honor. So this is what I wanted to point out, that the Sixth Circuit has retained its standard. Retained it or hasn't? Has it had a case? I'm sorry? Have they had a case? Not that's been reported, according to our research. Hasn't retained it. It just hasn't done anything with it. Well, there's district court rulings in the Sixth Circuit, Your Honor, that have dealt with their standard. I am not aware, and we did not identify an appellate ruling on that. Since Rockwell? Since Rockwell. There has not been a Sixth Circuit appellate case that we identified that evaluates that standard. Does Miller v. Gammie apply for the district courts, too? I mean, could they say, well, Rockwell is an intervening thing, and so we're not going to follow this standard by the Sixth Circuit? I'm sorry. I'm just having a little difficulty hearing you. I'm sorry. I don't know why my thing is working. I don't think it's working. Anyway. It is? It's me. Okay. So my point is that I don't think the district courts have the freedom that the courts of appeals have to, but maybe I'm wrong, to find that there's been an intervening authority that compels them to decide a case a different way. Clearly not. Clearly not. And I think that the So your argument that the district courts have applied it doesn't really mean anything. Oh, it doesn't. It does not. But the district courts' rulings have not gone to an appeal. I was simply trying to point out that the Sixth Circuit has retained its sort of additional requirement. Which is what? Which is that they have been a disclosure to the government prior to the public disclosure. But that's not what you're arguing for here. I'm simply pointing out that I know, but that's what I want to be clear about, because at some point it seems like it is what you're arguing for. So I want to know, what are you arguing for? Are you arguing for that rule, are you arguing for the Wang rule, or what are you arguing for? Thank you, Your Honor. I'll be very clear. Okay. I believe that the Wang rule is not clearly irreconcilable with Rockwell. That the doctrine of stare decisis suggests that this court should not set aside 23 years of precedent where there's not a clear dispute raised with a higher authority. And I believe that the purpose of Wang to encourage relators to come forward promptly with information, independent, if it's necessary, of the public disclosure so long as they have had some hand in that public disclosure is not irreconcilable with the purposes of the prior provisions of the Act. Yes. Just to clarify. So Wang is applicable only to the pre-2010 statute? That's correct. And do we have a sense of how many cases this is affecting? We were asked that at the panel, and we really don't, because many of these are still remaining under seal. But what we do know is there have been cases ruled upon in this circuit since the Pound argument. We've identified the Mahondra case that has been ruled, and cited Wang did not determine on the question of whether or not there was a hand in. The districts here continue to apply that. Yes, I understand they can't overrule precedent, but I think the point is that others have not called out this obvious irreconcilability. So as a practical matter, these sorts of cases pen for a very long time, so there could be a large number of pre-2010 cases still in the pipeline? There could be a significant number of cases. We really don't know for those that are under seal. They're obviously limited in some sense, but we don't have that information. I don't believe that information is publicly available. How broad is the 2010 statute? That is to say, does it cover all of the False Claims Act, or does it only cover False Claims Act as they result to health care? As a result of? As they relate to health care. No, it covers all forms of actions brought under the False Claims Act. It is not limited to health care. Hypothetically, if a majority of this panel were to say that Wang is inconsistent with I still want Meyer. I think Meyer still stands for the proposition that there are at least the direct and independent obligations imposed regarding the information. The Court would still presumably apply that, but the problem is. But in Meyer, they presumed that Wang was correctly decided. And at the time, Rockwell hadn't, didn't exist. Yes, Your Honor. I mean, the Meyer ruling was founded upon this Court's Wong opinion and the standards, and concluded that the relators there did not meet that test. So if Wang goes, how does Meyer survive? I know that Judge Smith was suggesting that perhaps surgically there were things that might have appealed to either side, but how would it survive? Well, I actually don't know the answer to that, but it does raise the problem with, were the Court to simply reject the Wang standard now, rethink it, notwithstanding stare decisis or its earlier considerations, it leaves in doubt what the district courts will do or will apply as these cases come through. And I'm sorry, I really don't understand that. I mean, most of Meyer had nothing to do with this original source problem at all, right? No, no, Your Honor. It had to do with the direct — yes, I'm sorry. It had to do with other aspects of the original source problem, but it didn't have to do with this aspect of it at all. There was a little reference to it in passing, but the rest of what Judge Smith was referring to is not affected by any of this. Well, the relators' claims were deficient under both the lack of direct information or independent information, as well as for the fact that they didn't have a hand in the public disclosure. So the direct and independent information part is not affected at all, which is most of the opinion. Well, Your Honor, I think that that's correct in the sense that direct and independent are separate from the obligation of a hand in. So Meyer is not going anywhere except for the part that happened to be directly dependent on Wang. Obviously, if we overrule Wang, we overrule the case that relied on Wang, but other than that, the rest of the opinion is still there. Well, the rest of the opinion is still there, yes, Your Honor. And I'd be surprised if you'd want us to undo. I mean, it suggested what direct knowledge meant. You won on that. It suggested what independent knowledge meant. You won on that. I doubt you'd want to go back to the district court, which I assume you wanted to do, even if you lose on Wang, and not have that be the standard by which the district court determined whether this information was really from the source it should be or not, right? Correct, Your Honor. So you wouldn't want Meyer thrown out either. Even if Wang were to be exterminated, let's say, from our case law, you'd still want to keep the part of Meyer that explains that, would you not? Well, certainly, Your Honor. And, of course, Meyer is not alone in those two definitions. I'm just trying to make sure I'm understanding your argument, because I thought you were saying toss out both. But I don't think you'd really want that. I would not, Your Honor, nor do I think that that would be, you know, in keeping. The fact is that in the Wang holding, this Court identified six years after the adoption of the 1986 amendments that there was a balancing test required for a relator who might have direct and independent information, but who withheld their information, or someone who had nothing to do with bringing that matter forward for the government's consideration. But there was no — the standard that was adopted in Wang did not require that they withheld the information. They could have handed the whole thing over to the government. I mean, unless they had a hand in the public disclosure, even if they didn't have  Well, I think that there are — Is that correct? Partly, but not completely, because there are circumstances in which relators have, and they have gone forward and had a hand in the public disclosure. I understand that, but I'm hypothetical. In my example, they were — they gave the government everything, but they didn't have a hand in the public disclosure. They thought they shouldn't. I want to go to the government. I don't want to go to the media. Well, Your Honor, the Johnson Controls case points out the fact that if they have already gone on, it draws the connection between Biddle and Wang, and it says that between the two, it encourages relators to come forward timely to bring their case — to bring their case before a public disclosure where they possibly can. But where there's been a public disclosure, they should not benefit from having including this Court have called a parasitic lawsuit founded upon that. And that — and all of that assumes that we don't look at the statute, that we try to find that rationale someplace else. It does, Your Honor. Because it isn't in the statute, is it? It is not. The hand-in requirement is clearly not in the statute, Your Honor. This Court found that the statute had ambiguities that call for consideration of the legislative history, balancing — And it's also not in the legislative history, for the very reason I've been saying. That is, the legislative history may have demonstrated a desire to encourage whistleblowers, but it didn't necessarily encourage them to go public. Well, I think — I think, Your Honor, that this Court's conclusions on the legislative history was that there was a concern that people would bring their information forward timely. There was a concern that people would read an article in the newspaper, said, oh, I worked at that place, I'm going to bring up false claims to that case, and would be unjustly rewarded for not having added anything of value to what the government already knew. Mr. Luce, may I ask you a question on a different subject? I'm here. It's your pleasure, Your Honor. What is your position as to the effect of the first-to-file rule as to Gadecki's claim? The first-to-file rule, as — Does she lose or does she win? Ms. Gadecki? Yeah. She loses. Okay. Now, tell me why. She loses for two reasons, neither of which I think are inconsistent with this Court's ruling in Campbell. First, Ms. Gadecki did not meet the obligations of going forward with all of her information to the government. This came out — it's in the record — after she retained attorney-client privilege information, among other things. She didn't give it to the U.S. Attorney. Well, that doesn't go to first-to-file, does it? Well, it's not directly to the first-to-file. But related to the first-to-file, Your Honor, is the fact that, unlike Campbell, the sequence here was quite different. At the time that Ms. Gadecki filed her case, it was the second QI-TAM. There was pending the Hart-Pence QI-TAM. Three months later, she filed her QI-TAM. Her QI-TAM was elicited as a result in part of an interview with the government investigators looking at the Hart-Pence case. But the claims of fraud seem to me to be quite distinct. And Mr. Hart-Pence was saying that the fraud of Kinetics was in the billing of Medicare by using a symbol, KX, fraudulently, saying, you don't have to look at any documentary back up here because we're using this symbol. Gadecki's claim was that the vacuum-assisted therapy should not have been used unless there were detailed written orders, I take it, by the physician. So that was, in essence, a different aspect of the fraud. I mean, they were fraudulent claims being made in two quite different characteristics, were they not? Your Honor, I think that the record actually shows that they have argued that. It also shows that Ms. Gadecki argued in the lower court that her claims were substantially related to those of Mr. Hart-Pence's. That's what she filed in her related case statement. She also, in briefings, identified that the KX modifier underscored most of her claims. But in this case, the claim here is the same. The claim is that a physician authorized the use of the vacuum-assisted wound closure, that there is a requirement that there be adequate information in the medical record to support that physician's order. That's what the KX modifier indicates, that there is substantial information in the medical record to support the reasonable and necessary application here. But the detailed written orders is an additional requirement to the use of the therapy, is it not? It is an invented requirement, Your Honor. I think that that's her allegation, but taken at best as an allegation. Was there a finding in the district court that her claim was barred by the first to file? Yes, Your Honor. All right. And perhaps you can address that and tell us why that filing was wrong. I guess I want to follow up on Judge Baez's questions because I had similar questions. If, in fact, the court were to suggest that Wang is not proper precedent, that we're to go rather with the Rockwell idea, and we say it's different than Wang, at that point, I expect you'd want us to remand these to the district court to focus on the first two factors? The direct and independent, yes, Your Honor. As to both claims? Well, Your Honor, we would — I mean, I think Ms. Gutecki is the second to file. But if Harpence was found to be a defective claim, then she could be the first to file. That's the question. I understand. And what I'm saying is I don't believe so. You don't believe so? No, Your Honor. Because I believe that the claims are utterly related, and they have, in fact, pled that they are utterly related. I mean, that may matter, but does she have the same Wang problems as Harpence? Yes, Your Honor. So if we were to find that Harpence had Wang problems, your view would be that she had Wang problems? Oh, clearly. And that's, in fact, what we argued at the time. And they offered, by the way, no evidence whatsoever on that issue. But my question, again, which is subsumed in my good friend Judge Callahan's question is, if the court ruled on this question on a first-to-file basis, is the claim over rather than going on with this other analysis? Ms. Gidecki will always have been the second to file. Her claim fails regardless of how this court deals with the Wang ruling for Mr. Harpence is our position. And the reason for that is that both these cases are pending at the same time. Both these cases were found to be utterly related to one another, and the small nuances or changes in the single claim. There's only a single claim that goes to Medicare. What you're telling me, I appreciate all this, but what you're really telling me is even if I were to say Wang is not our precedent anymore, Ms. Gidecki's claim has already been ruled on on a different basis, which is first-to-file, and therefore all I'm doing is reviewing what the district court did on first-to-file? Yes, Your Honor. And she has a retaliation claim. She has a retaliation claim. She has a retaliation claim that is still pending. Yes, Your Honor. The following up on Judge Smith's question, if the panel says that Wang is no longer good law, and it turns out that Mr. Harpence is not an original source under the statute, then why doesn't Ms. Gidecki step up because she's no longer barred by the first-to-file rule, and then the district court can analyze her case also to determine if she's an original source? That's the question raised by Campbell, by this Court. And in this Court, in different circumstances, Campbell concluded that where there had been an original filing and then a subsequent filing where the original filing was found to lack jurisdiction, then the second filing was not barred under the first-to-file rule. In this case, unlike the Campbell setting, if they both go back, there's two key tam cases before the Court, which the trial court found were to be substantially the same on their allegations. So put another way, if we had, as we did, suggested in the district court that only one of these can go forward, Your Honor, dismissal of Gidecki within a subsequent reversal of the Wang ruling in restoring Mr. Harpence would be perfectly consistent with the outcome in Campbell, that because both those cases were pending before the Court at the same time. But why does that make a difference? In other words, if Mr. Harpence didn't meet the statutory criteria to be an original source, that wouldn't prevent Ms. Gidecki from meeting those criteria necessarily. Well, if they both go back down, Your Honor, on the concluding that Wang no longer is the rule of this circuit, there are two key tam cases. They're both based on the same series of claim submissions. You are going to argue that for other reasons Mr. Harpence is not an original source, right? We are, Your Honor. There are other reasons. Those reasons might not pertain to Ms. Gidecki, right? That's what you're being asked. They might not apply to Ms. Gidecki. Right. So suppose that was the case. Why then wouldn't her case survive? Under the first defile rule? Yes. Yes. If Mr. Harpence were dismissed and she were not dismissed on the same grounds and she's still in front of the Court, then her claim would survive at that point. But that's why we shouldn't be doing anything with it at this point. Well, I disagree, Your Honor, and I'll close here with my 20 seconds, that I believe that the purpose of the first defile rule is to avoid exactly what happened here, which is a way a relater recruited another relater to come in with modestly different variances on exactly the same set of claims to Medicare to enhance their prospects for recovery. But then you're arguing with the Campbell rule. I'm arguing that Campbell dealt with a different setting, which was a case is gone and then somebody files one. This one, they're both there together. They are co-plaintiffs. My time is up. Thank you, counsel. Thank you. Thank you. I'd like to use a little bit of my time first to address something, a question raised by Judge Kaczynski, and hopefully round out and give a more complete answer to that question, and then address some of the points made by Judge Bea and Judge Akita. Judge Kaczynski, you mentioned that isn't voluntary disclosure a good thing by a company? And it absolutely is a good thing. And Congress has anticipated that issue and sought to encourage it. In the False Claims Act, they put in a provision that gives the company certain incentives to come forward, mainly they'll pay a smaller damage or liability fee. They will be encouraged through other incentives. So Congress had anticipated and came forward. My example is just that the statute by design and the application of the False Claims Act provision that the Wang case would encourage seems to be at odds with the structure of the False Claims Act. And even though I have no empirical answer, no empirical example, as Judge Thomas alluded to, of a company leaking or, you know, potential information to immunize itself or to reduce its potential liability, that is conceivable under the way the statute is designed, and that clearly wasn't what Congress would have intended. Judge Bea made a point about that part of — it wasn't part of, I believe, the reasoning of the Wang court that — and certainly counsel for the appellee made the point that they intended whistleblowers to come forward quickly and not sit on their information, and the court in Wang was very concerned about that. They said, why should this guy benefit, even though he might be an original source, when somebody else leaked the information to the press? Well, this was in the early years of the amendments of the False Claims Act, and at that point, you know, that might be a valid question, although Congress clearly addressed that problem, too, because Congress said if you snooze and you wait on your information, you could lose. There's a first-to-file bar that comes into play. So you'll be penalized for that if you sit on your information. And if — and I would say, you know, there's a good likelihood with the news about how powerful this statute is that someone like Mr. Wang, if he had good information, might have been beat to the punch and would have been barred by that if he brought his case today. So Congress had thought about that as well. Counsel, your time has expired. Thank you very much for your arguments. Okay, thank you. The case has heard will be submitted for decision. We'll be in recess. Thank you.
judges: Thomas, Reinhardt, Kozinski, Silverman, Wardlaw, Fletcher, Gould, Berzon, Callahan, Bea, Ikuta, Smith